UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| AMERICAN PRIDE PETROLEUM, INC., | ) ) | |
| | ) | Civil Action No. 6: 07-250-DCR |
| Plaintiff, | ) ) | |
| V. | ) ) | |
| MARATHON PETROLEUM COMPANY, LLC and ROBERT WILSON, | ) ) ) | **MEMORANDUM OPINION AND ORDER DENYING INJUNCTIVE RELIEF** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff American Pride Petroleum, Inc.'s ("APPI") Motion for a Temporary Restraining Order.  [Record No. 1, Ex. 7]  APPI seeks an order prohibiting Marathon Petroleum Company, LLC ("Marathon") from terminating its franchise agreement with APPI and allowing APPI to buy "branded" Marathon gasoline for cash, despite its misbranding of Marathon gasoline and its failure to pay sums past due to Marathon from gasoline that has previously been sold on credit.  For the reasons discussed herein, the Court will deny APPI's motion.

## I.    RELEVANT FACTS

This litigation arises out of the franchise relationship initially entered into by the parties in late October or early November, 2005.  Marathon refines and markets gasoline and distillates, and APPI had previously been a distributor of "unbranded" gasoline, providing Marathon's

product to the public and to other retail establishments.  In 2005, Defendant Robert Wilson, an agent of Marathon, approached APPI's president, Almita Hardwick, and her husband, Gary Hardwick, concerning the possibility of APPI becoming a "branded" franchisee.  According to the Hardwicks and APPI's operations manager, Mike Erp, Wilson stated that the average cost of "branded" gasoline was only 3/4 cent higher than "unbranded" gasoline, and APPI would have an exclusive territory to sell Marathon "branded" gasoline.  Based on these alleged representations, APPI agreed to become a "branded" franchisee of Marathon, and the Hardwicks signed Marathon's offer on November 1, 2005.

Under the terms of the franchise agreement, Marathon agreed to sell and APPI agreed to buy "branded" Marathon gasoline.  In addition, APPI was authorized to display and use Marathon's signs, trademarks ("Marathon Marks") and credit card processing equipment.  The franchise agreement consisted of three documents (the Product Supply Agreement, the Master Branding Agreement, and a Gasohol Rebate Agreement), all of which were entered into on December 20, 2005.  The term of the agreement was from November 1, 2005, through October 31, 2008.  Almita Hardwick, as president of APPI, signed the documents, but testified that she did not read them.  All three documents contain integration clauses disclaiming any oral representations.

In March, 2006, Wilson approached Almita Hardwick with a second product supply agreement, allegedly stating that the first agreement contained an error regarding the dates.  Ms. Hardwick again signed the agreement without reading it.  At the same time, she also signed a

Mutual Cancellation agreement, effectively terminating the December 20, 2005, Product Supply Agreement.[1]

Under the Branded Product Supply Agreement dated March 30, 2006, APPI agreed to purchase Marathon "branded" products from Marathon for APPI to sell to the public and to independent Marathon "branded" outlets. *See* Branded Product Supply Agreement, Art. 2.1. The agreement further states that the misbranding of Marathon gasoline, including the sale of Marathon "unbranded" gasoline as Marathon "branded" gasoline constitutes grounds for termination of the contract under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq*. *See id.* Art. 5.4(b). Additionally, the agreement provides that APPI could purchase Marathon "branded" gasoline on credit, but its failure to timely pay could result in: (i) termination of the franchise, (ii) a requirement that APPI pay cash in advance for future purchases, or (iii) discontinuation of further sales until all past due amounts had been paid. *See id.* Art. 3.3. Finally, while the agreement also contains an integration clause, it makes no mention of the alleged price representations or the exclusive territory.

At some point in 2006, APPI began suffering financial difficulties, allegedly due to their agreement to change the terms of their credit relationship with Marathon, which limited the amount of credit to $300,000 for "branded" gasoline. As a result, beginning on or about December 27, 2006, and continuing through the present, APPI has been selling Marathon "unbranded" gasoline under the Marathon Marks as "branded" gasoline. Additionally, in

---

[1]     The parties agree that the intent of the Mutual Cancellation Agreement was to terminate the December 20, 2005 Product Supply Agreement. However, the Mutual Cancellation Agreement incorrectly references a Product Supply Agreement dated November 1, 2005.

January, 2007, four electronic funds transfers issued by Marathon under a funds transfer agreement with APPI were returned for insufficient funds. According to APPI, they were unable to fulfill their past due credit obligations (totaling over $150,000) to Marathon, and Marathon refused to extend more credit or sell the "branded" gasoline on a cash basis. APPI claims that, to stay in business, it were forced to begin buying "unbranded" Marathon gasoline from a different franchisee, yet it continued to sell the product as "branded" gasoline under the Marathon Marks.

On May 17, 2007, Gary Hardwick admitted to a representative of Marathon that APPI was misbranding the gasoline. Thereafter, on June 6, 2007, Marathon sent APPI a rehabilitation letter, giving APPI an opportunity to cure these deficiencies. The letter noted APPI's failure to pay sums past due, its misbranding of Marathon gasoline, and its failure to purchase Marathon "branded" gasoline in accordance with the Branded Product Supply Agreement. APPI refused to comply with the demand letter and continued selling "unbranded" gasoline under the Marathon Marks. As a result, on June 26, 2007, Marathon attempted to terminate the franchise relationship with APPI, effective July 17, 2007.

However, the June 26, 2007, letter incorrectly referred to the December 20, 2005, Product Supply Agreement rather than the March 30, 2006 Branded Product Supply Agreement. It is unclear whether this affects the validity of the termination, as Almita Hardwick testified that she understood the letter to be attempting to terminate the entire franchise agreement. [Record No. 19, p. 110] On July 20, 2007, Marathon sent a second letter clarifying that the franchise agreement dated March 30, 2007 had been terminated on July 17, 2007.

-4-

In the interim, on July 17, 2007, Almita Hardwick, on behalf of APPI, filed the current action for breach of contract and fraud in Pulaski Circuit Court, together with the Motion for a Temporary Restraining Order to prohibit Marathon from terminating the franchise and to allow APPI to buy "branded" gasoline on a cash on delivery basis.  Marathon removed the action to this Court on July 20, 2007.  A hearing was held on APPI's motion on July 30, 2007.

## II.      STANDARD FOR INJUNCTIVE RELIEF

In determining whether a motion for injunctive relief should be granted, a court should consider the following four factors: "(1) the likelihood that the movant will succeed on the merits, (2) whether the movant will suffer irreparable harm without the injunction, (3) the probability that granting the injunction will cause substantial harm to others and (4) whether the public interest will be advanced by issuing the injunction."  *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006).  However, "[n]one of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co.,* 73 F.3d 648, 653 (6th Cir. 1996) (citations omitted).

## III.    LEGAL ANALYSIS

APPI claims that Marathon has violated the terms of the franchise agreement by selling "branded" gas at a higher price and by refusing to extend credit to APPI or sell gasoline on a cash-on-delivery basis.  It has asserted claims for breach of contract and fraud in the inducement under Kentucky law.

With respect to the breach of contract claim, APPI contends that Marathon breached the franchise agreements by failing to give proper notice of termination of the franchise relationship

under the PMPA and by refusing to sell Marathon "branded" gas for cash during the contract term.  Conversely, Marathon contends that the notice of the termination was proper and that it acted reasonably in terminating the franchise relationship due to APPI's failure to pay all sums due to Marathon, its failure to purchase Marathon "branded" products, and its misbranding of gasoline sold under the Marathon Marks.   Additionally, Marathon asserts that APPI's misbranding of gasoline sold under the Marathon Marks violates the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

Under the PMPA, termination of a franchise agreement for material violations must be made after the requisite notification is given pursuant to 15 U.S.C. §§ 2802 and 2804.  Generally, a franchisor may terminate the franchise relationship by giving 90 days notice; however, if 90 days would be unreasonable under the circumstances of a particular case, a franchisor may terminate with less than 90 days notice.  *See* 15 U.S.C. § 2804(a), (b)(1).  Further, the franchisor must have actual or constructive knowledge of the grounds for such termination within the preceding 60 days of the notification if less than 90 days notice is given.   15 U.S.C. § 2802(2)(B)(ii).

Here, the parties agree that less than 90 days notice was given and that the 60 day provision of § 2802(2)(A)(ii) is applicable.  [*See* Record Nos. 20, 21] However, the parties dispute when Marathon had knowledge of the grounds for termination and when the notice of termination was given.  APPI contends that the nonpayment, failure to buy branded gasoline, and the misbranding of "unbranded" gasoline were known to Marathon at least prior to April 26, 2007, and that the notice of termination was not given until July 20, 2007.  According to APPI,

the initial notification of termination related to the December 20, 2005, agreement that had already been terminated, and, therefore, APPI did not receive notice of the termination until it received Marathon's supplemental letter dated July 20, 2007.  As a result, APPI contends that Marathon's notice of termination was untimely under the 60 day provision of § 2802(2)(A)(ii) because Marathon had knowledge of the grounds for termination more than 60 days before the termination.

Marathon asserts that the notice was timely because it sent the termination letter on June 26, 2007, only 39 days after APPI acknowledged misbranding the gasoline on May 17, 2007. Marathon asserts that this termination is not affected by the incorrect reference to the Product Supply Agreement because Almita Hardwick testified that she understood the June 26 letter to cancel the entire agreement.  Additionally, Marathon asserts that the failure to pay and the failure to purchase "branded" gasoline are ongoing violations and are separate occurrences or noncompliances.  Marathon further contendss that, under *California Petroleum Distributors, Inc. v. Chevron U.S.A. Inc.*, 589 F. Supp. 282 (E.D. N.Y. 1984), the June 6, 2007, rehabilitation letter gave rise to a new event of noncompliance and restarted the 60 day notice period.

After reviewing the exhibits in the record, the hearing transcript, and the applicable law, it appears that Marathon is correct in its assertion that APPI will not be able to establish a violation of the notice provision of the PMPA.  First, it is clear that APPI's misbranding of Marathon's gasoline is grounds for immediate termination of the franchise relationship.  *See Wisser Co. v. Mobil Corp.*, 730 F.2d 54, 60 (2d Cir. 1984) (holding that forthwith termination was reasonable under the PMPA because the misbranding of gasoline is "a serious violation of

[the franchisor's] contract and property rights" and constitutes a "fraud on the public").

Accordingly, Marathon properly exercised its right to give less than 90 days notice of

termination. Second, it appears that Marathon also complied with the 60 day notice provision

regardless of whether the notice was given on June 26 or July 20, 2007, because the June 6,

2007, rehabilitation letter constituted a new event of noncompliance and because the failure to

pay was an ongoing violation. *See California Petroleum Dist., Inc.*, 589 F. Supp. at 288 (holding

that "each of [the franchisor's] repeated unsuccessful efforts to negotiate payment or a guarantee

of the outstanding balance on [the franchisee's] account, gave rise to a new event of

noncompliance").

It is also unlikely that APPI will succeed on its breach of contract claim under Kentucky

law because the alleged oral misrepresentations by Defendant Wilson would not be admissible

under the parol evidence rule. Although such statements may support a claim of fraud in the

inducement, they cannot be used to alter the written agreement, as all three relevant agreements

contain an integration clause. *See Radioshack v. Comsmart*, 222 S.W.3d 256, 261 (Ky. App.

2007) ("The parol evidence rule is not a procedural devise, but, rather, a substantive rule of law

that prevents the introduction fo oral statements into evidence to alter a written agreement, per

force lending integrity to writings.")

Next, APPI asserts that Marathon's agent, Defendant Wilson, fraudulently induced APPI

to enter into a contract by misrepresenting the price of "branded" Marthon gasoline and by

stating that APPI would have an "exclusive" territory. Additionally, APPI claims that Marathon

included several stations as "branded" in the appendices to the contracts which were not

ultimately "branded."  In response, Marathon contends that the alleged representations relate exclusively to future events and are not actionable under the Kentucky Court of Appeals decision in *Radioshack*.  Marathon further asserts that, even if APPI could succeed on its claim for fraud in the inducement, the only forms of relief available are rescission of the contract or affirmation of the contract with damages.

To succeed on a claim for fraud under Kentucky law, a plaintiff must prove, by clear and convincing evidence, the following six elements: "(1) that the declarant made a material misrepresentation to the plaintiff, (2) that this misrepresentation was false, (3) that the declarant knew it was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff."  *Id.* at 262 *(citing United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).  Where a plaintiff claims fraud in the inducement of a contract, "[p]arol evidence is admissible to show that the making of the contract was procured by fraudulent representations."  *Id.* at 260.  However, for a plaintiff to prove that he *reasonably* relied on an oral representation, the representation must relate to past or existing facts.  *Id.* at 262.  "If the alleged misrepresentation relates to a future promise or an opinion of a future event, then it is not actionable."  *Id.*

Here, Marathon contends that any alleged misrepresentations concerning price and exclusivity related only to future events and performance and are not actionable.  However, at the hearing on July 30, 2007, APPI submitted evidence that Defendant Wilson's representations concerning the price of "branded" gasoline were based on a chart representing the past

differences in price between "branded" and unbranded gasoline.  If such representations were false, APPI could maintain an action for fraud in the inducement.  Nevertheless, even if APPI could succeed on the merits of this claim, it is not entitled to the relief it requests because a claim for fraud in the inducement does not allow reformation of the contract.  *See Radioshack*, 222 S.W.3d at 261.  APPI seeks an order from this Court prohibiting the termination of the franchise relationship and allowing it to buy gasoline on a cash on delivery basis, both of which are contrary to the terms of the contract and the PMPA, which allow for termination of the franchise relationship for failure to pay.  *See* Branded Product Supply Agreement, Art. 3.3; 15 U.S.C. §§ 2802(b)(2)(A-C) and 2802(c).  The contract further provides that if APPI fails to pay, Marathon can exercise its option to discontinue all future sales until the past due amounts are paid in full.  *See* Branded Product Supply Agreement, Art. 3.3.  Accordingly, the Court would have to reform the contract to grant the relief requested by APPI.

Applying the relevant factors for injunctive relief, the Court finds that APPI is not entitled to injunctive relief.  First, as discussed above, APPI does not have a strong likelihood of succeeding on its breach of contract claim under Kentucky law or the PMPA.  Further, although it may have a stronger case for fraud in the inducement, that claim carries a higher burden of proof (which has not been met here).  However, more importantly, a claim of fraud does not entitle APPI to the relief it requests.  Therefore, this factor weighs against granting a temporary restraining order.

As to the second factor, while APPI may suffer some monetary injury as a result of the termination of the franchise agreement, it will not be faced with eviction or financial ruin, as it

-10-

owns the premises and has repeatedly asserted that it can continue to buy gas on a cash basis. Further, while APPI may incur some hardship as a result of Marathon removing its Marks and equipment, it does not appear that APPI has any right to continue to use Marathon's Marks under the circumstances of this case. *See Wisser*, 730 F.2d at 60-61. However, because the Sixth Circuit has held that the loss of a franchise relationship can constitute irreparable harm and because APPI has asserted that it will lose its investment of $300,000.00 in Marathon Marks and equipment, this factor weighs in favor of granting the injunction. *See Stenberg v. Checker Oil Co.*, 573 F.2d 921, 923 (6th Cir. 1978) (concluding that "irreparable harm may be established by a franchisee . . . by proof of financial losses from withholding or revoking a franchise or lease").

Nevertheless, the Court finds that any potential harm to APPI is substantially outweighed by the harm to Marathon, the public interest, and the fact that APPI is unlikely to succeed on the merits of any claim that could warrant injunctive relief.[2] APPI has candidly admitted that it has been selling "unbranded" gas to its customers as "branded" gas under the Marathon Marks, without informing its customers.[3] This "fraud on the public" and "serious violation of [Marathon's] contract and property rights" had been ongoing for at least six months.

---

[2]    As noted previously, APPI may succeed on its claim for fraud in the inducement if it can establish that the misrepresentations related to past events, but such a claim only provides for rescission or affirmation of the contract with damages. It does not provide for reformation of the contract and would not entitled APPI to the injunctive relief it requests: namely, reformation of the contract. *See Radioshack*, 222 S.W.3d at 261 (holding that "false and fraudulent representations made by one of the parties to induce the other to enter into the contract are not merged in the contract").

[3]    Marathon "branded" gasoline contains STP additives, while Marathon "unbranded" gasoline does not. Therefore, APPI and its dealers are defrauding the public by selling unbranded gasoline, but representing to the public that it is a branded product.

Additionally, as a "jobber," APPI supplied this "unbranded" gasoline to other stations who may or may not have known that they were also perpetrating a fraud on the public.

The situation presented in the current action is highly analogous to the situation confronted by the Second Circuit Court of Appeals in *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir. 1984). However, in that case, the owners at least claimed that they advised the public of the misbranded gasoline. The Second Circuit held that,

> [i]n light of the gravity of Wisser's conduct, we conclude that Wisser has not raised a serious question as to the reasonableness of the forthwith notice of termination. If Wisser was engaged in passing off non-Mobil gasoline under the Mobil trademark, as  the district court found Mobil probably would be able to prove, Wisser was committing a serious violation of Mobil's contract and property rights and it was perpetrating a fraud on the public. There was also evidence before the district court that this conduct had been going on for as long as six months before Mobil was able to confirm it. We believe that Mobil was justified in taking steps to stop this practice and to disassociate itself from Wisser immediately. Were Mobil required to wait 90 days or some shorter period between notice and the effective date of termination, there is no reason to believe that Wisser would not have used the time to continue its alleged misbranding to its profit. Moreover, Wisser owned the premises, so it was not faced with immediate eviction and associated financial ruin, and Wisser owns a number of other service stations. True, Mobil recovered its signs and operating equipment from the premises, but Wisser had no right to continue to use Mobil's  trademark, and it would not be unduly burdened by having to rent or buy operating equipment of its own. Wisser thus could continue to sell gasoline it was buying from other sources, but not under the Mobil trademark, with perhaps a temporary delay while Wisser obtained and installed substitute equipment. Under the circumstances, forthwith termination was reasonable.

Wisser, 730 F.2d at 60-61. The court further concluded that,

> Thus, Wisser was not entitled to a preliminary injunction regardless of the relative hardships. Even if Wisser had raised such serious questions on the merits, on this record we find adequate support for the district court's determination that the hardship to Mobil of granting the requested preliminary injunction would outweigh the hardship to Wisser of denying it. As already indicated, Wisser would not be unduly burdened by the removal of the Mobil equipment and

trademark, and the injury to Mobil inherent in selling misbranded gasoline is serious.

*Id*. at 61.

Here, as in *Wisser*, Marathon reasonably terminated the relationship due to APPI's multiple violations of the franchise agreement, most notably the sale of misbranded gasoline. APPI has failed to present any grounds other than the inherent injury in the loss of the franchise relationship to support its request for a temporary restraining order. APPI has not expressed any reservations concerning its decision to sell "unbranded" gasoline as "branded" gasoline under the Marathon Marks, and it is clear that it would continue to do so if Marathon had not terminated the relationship. This fraud constitutes a substantial injury to Marathon as well as the public. Accordingly, the Court finds that the factors weigh against granting injunctive relief under the circumstances of this case.

## IV.   CONCLUSION

It is hereby **ORDERED** that Plaintiff American Pride Petroleum, Inc.'s Motion for a Temporary Restraining Order [Record No. 1, Ex. 7] is **DENIED**.

This 10th day of August, 2007.



Signed By:

*Danny C. Reeves*

United States District Judge

-13-