UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| AMERICAN PRIDE PETROLEUM, INC., )<br>)<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MARATHON PETROLEUM CO., LLC, )<br>et al., )<br>)<br>    Defendants. )<br>) | Civil Action No. 07-250-ART<br><br><br>**MEMORANDUM OPINION & ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Marathon previously moved for summary judgment on all of American Pride's claims against it, as well as on its own counter-claims against American Pride. *See* R. 46. The Court granted Summary Judgment on most of these claims, but reserved ruling on the fraud-in-the-inducement claim stemming from the Branded Product Supply Agreement. *See* R. 78. The Court also reserved ruling on the trademark infringement claim under 15 U.S.C. § 1114. *See id.*

With respect to the fraud claim, the Court requested additional briefing in order to clarify whether a genuine issue of material fact exists on the issue of injury, which is the sixth element in the test for fraudulent inducement under Kentucky law. *See Radioshack Corp. v. Comsmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007). The parties filed supplemental briefs on this issue, and the Court conducted a telephonic hearing. Because there is no genuine issue of material fact on the element of damages, the defendant is entitled to summary judgment on the fraud-in-the-inducement claim.

DISCUSSION

Under Kentucky law, American Pride must prove by clear and convincing evidence that it was damaged as a result of the putative fraud. *See Radioshack Corp.*, 222 S.W.3d at 262 (listing six elements of fraud in Kentucky). It has failed to submit any admissible evidence on this element, and thus, summary judgment is mandated. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

The thrust of American Pride's argument is that it was fraudulently induced to enter into the March 30, 2006, Branded Product Supply and Trademark License Agreement ("Branded Product Agreement"), which allowed Marathon to refuse to sell American Pride gas for cash. American Pride does not dispute that it owed over $150,000 to Marathon at the time it demanded gas for cash. Nevertheless, American Pride argues that under the initial agreement, Marathon was required to sell it gas for cash–even if American Pride was arrears in payments on its credit account with Marathon. Because Marathon refused to sell gas to American Pride, American Pride claims that it suffered damages in three forms: 1) the cost of branding and then debranding its gas stations, 2) the cost to cover the product that Marathon refused to sell, and 3) lost profits.

1) <u>Cost to Brand and Debrand Stations</u>

In support of this alleged injury, American Pride points to three pieces of evidence: (1) the affidavit of Gary Hardwick, which states that American Pride spent $137,000 to brand the stations and estimates that it spent approximately $66,000 to debrand the stations, *see* R. 82 at 10 & Exh. 7; (2) an itemized estimate of its costs to brand and debrand, which was attached to Hardwick's

affidavit; and (3) its response to Interrogatory No. 3 of Defendants' December 29, 2008 Interrogatories, where it listed $137,000 incurred in branding the stations, *see* R. 82 at 9 & Exh. 7.

As an initial matter, the contents of Hardwick's affidavit, as well as that of Christ Ballou's, are inadmissible because they were not provided in a timely fashion. Indeed, the affidavits were produced for the first time in response to the Defendants' motion for summary judgment. While they were submitted within the discovery deadline, the information should have been disclosed much sooner as part of the Rule 26 disclosures, or at the latest in response to Marathon's discovery request regarding damages. During the phone conference held on April 14, 2009, the plaintiff admitted that the documents relating to damages did exist—e.g., invoices, cancelled checks, and the like—but were not produced. Consequently, the contents of the affidavits are inadmissible because Federal Rule of Civil Procedure 37(c)(1) provides that a party who fails to provide the information required by Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The plaintiff has neither demonstrated nor suggested that the failure to provide this information in compliance with Rule 26(a) is either substantially justified or harmless. Thus, if American Pride is to survive summary judgment, it must do so without the affidavits of Hardwick and Ballou. This is significant because the contents of these two affidavits are the primary evidence that American Pride submitted in support of its damage argument.

American Pride argues that the itemized estimate of its costs—which is attached to Hardwick's affidavit—is admissible as a summary exhibit or business records, but this is argument is wrong. While Federal Rule of Evidence 1006 allows a chart, summary or calculation, it also requires that "the originals [used to create the chart] shall be made available for examination or

3

copying or both." American Pride has failed to provide the originals here, making it impossible for Marathon to test the veracity of its calculations. *See United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004) ("The obvious import of these provisions [referring to the requirements of Rule 1006] is to afford a process to test the accuracy of the chart's summarization."). Additionally, Federal Rule of Civil Procedure 26 requires a plaintiff to not only disclose a "computation of each category of damages," but also to "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). American Pride essentially confessed to noncompliance with this rule when it admitted at the telephone conference that, to date, it has not provided any of the original documents (or copies), such as cancelled checks, invoices or receipts for its alleged costs of branding and debranding. To be sure, American Pride states in its Supplemental Response that it has provided invoices for branding the stations. However, a careful review of the attached exhibits uncovers no invoices. Thus, standing alone, the summary is not admissible and cannot be used to defeat summary judgment. *See Bessemer & Lake Erie R.R. v. Seaway Marine Trans.*, No. 1:06 CV 2392, 2008 WL 2074028, at *12-17 (N.D. Ohio May 14, 2008) (granting partial summary judgment as to damages because the plaintiffs failed, without justification, to disclose a computation of damages and supporting documents and, consequently, they could not use evidence of damages either at trial or in opposing defendants' motion for summary judgment); *Multimatic, Inc. v. Faurecia Interior Sys. USA*, No. 05-60120, 2007 WL 627874, at *7-8 (E.D. Mich. Fed. 26, 2007) (granting summary judgment because plaintiff failed, without justification, to timely disclose a computation of damages and, consequently, he could not use the evidence of damages either at trial or in opposing defendant's motion for summary judgment).

4

Nevertheless, if the affidavit and attached itemized estimate of costs were admissible, they would not be enough to survive summary judgment, even when considered together with the response to Interrogatory No. 3 of Defendants' December 29, 2008 Interrogatories. Together this evidence simply does not constitute significant probative evidence showing that there is a genuine issue of fact as to whether damages could be proven by clear and convincing evidence. *See Stevenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) ("The nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment."). Instead, the evidence that American Pride has submitted here, even if it were all admissible, would only slightly weigh in its favor because all they have essentially included is conclusory allegations of costs. They have done nothing to tie these costs to the putative fraud or support that they actually incurred such costs. As the Defendant pointed out during the phone conference, it is just as logical that the cost to debrand was minor–covering up the logo. Mere assertions do not constitute significant probative evidence. And it surely is not the kind of significant probative evidence on which a reasonable jury could find by clear and convincing evidence that American Pride incurred damages. *See Anderson*, 477 U.S. at 251–252 (explaining that the inquiry is whether there are issues that must be submitted to a fact-finder because they could reasonably be resolved in favor of either party); *see also Scotts, Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2009 U.S. Dist. Lexis 25257, at *43 (S.D. Ohio Mar. 26, 2009) (finding clear and convincing evidence of fraud when the plaintiff cited documents, affidavits, declarations, and deposition testimony in the record supporting its claim).

2) <u>Cost to Cover</u>

American Pride also submitted Mr. Hardwick's affidavit as evidence that it incurred considerable costs in covering for the alleged fraud. Mr. Hardwick states in his affidavit that

5

American Pride "had to pay at least .01 cent per gallon above costs" and that it "also lost .01 cent per gallon rebate." R. 82, Exh. 7 at ¶ 8. Again, however, the plaintiff fails to produce any evidence of this—e.g., checks, invoices or the like. Thus, even if the affidavit were admissible, it would not be enough to overcome Marathon's summary judgment motion.

Aside from Hardwick's affidavit, American Pride asserts that unbranded gasoline is sometimes more expensive than branded gasoline, and therefore it argues that it incurred damages as a result of buying unbranded gasoline to cover for the branded gasoline that Marathon refused to sell to it. The primary problem with this argument, though, is that American Pride has provided no evidence to support its contention. *Cf. United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts."). In fact, all of the evidence indicates that American Pride paid <u>less</u> for unbranded gasoline than it would have paid for Marathon branded gasoline. American Pride agrees that it covered with unbranded gasoline, which generally costs less than Marathon branded gasoline. *See* R. 80 at 16-17 (citing injunction hearing transcript at 64–65). More specifically, Marathon has submitted the OPIS sheets for the relevant time period which show that the average difference between unbranded and Marathon branded gasoline, bought on the open market, was 2.68 cents. This means that Marathon branded gasoline was more expensive, even when the rebates and discounts are taken into account. Finally, Marathon has submitted evidence that American Pride would have been entitled to neither the discount nor the rebates because its account was delinquent and it did not purchase enough gasoline annually. *See* R. 83 at 12 (indicating that the discount is only available when the product is paid for within ten days of the sale and the rebate is only available when the party purchases more than 1,500,000 gallons of

6

gasoline annually and that neither condition was met here). American Pride has failed to rebut this claim with any admissible evidence, even after the Court gave it multiple opportunities to do so in both briefings and hearings.

Given this contradictory evidence, Mr. Hardwick's conclusory testimony—even if admissible—would be insufficient to withstand summary judgment. *See Hinson v. Tecumseh Prods. Co.*, No. 99-6091, 2000 WL 1597947, at *2 (6th Cir. 2000) (concluding that plaintiff's statements that she worked 1,056.29 hours without overtime, and that with overtime she worked more than the number of hours needed to qualify for FMLA benefits, were conclusory allegations unsupported by specific evidence which were insufficient to establish a genuine issue of material fact when the opposing affidavits confirmed she had not worked the requisite hours). The evidence in this case is one-sided; Marathon has submitted substantial evidence showing that American Pride did not likely incur damages in covering the product, while American Pride submitted only the unsupported allegations of Mr. Hardwick. Where, as here, the evidence is so one-sided that no reasonable jury could find for the opposing party, judgment must be entered in favor of the movant as a matter of law. *See Anderson*, 477 U.S. at 251–52.

3) Lost Profits

American Pride claims that it also lost profits because of Marathon's putative fraud. Again, the facts are to the contrary. In support of its argument, American Pride points to Christy Ballou's affidavit. As explained above, the Court cannot consider this affidavit because it is inadmissible evidence. Even if it were admissible, however, it would not aid American Pride because it shows that American Pride's overall annual profits during the relevant time period actually increased rather than

7

decreased. *See* R. 82, Exh. 7.[1] According to the affidavit, the volume of gasoline and income from those sales increased in 2007. *Id.* at 14 (paginated as page one of the Affidavit of Christy Ballou). Additionally, Marathon argues that since it has already been established that American Pride likely covered with cheaper gasoline during that period, its profits were probably even higher than the documents indicate. Furthermore, even if American Pride's profit per gallon decreased during the relevant period, *see* R. 82 at 10, American Pride has submitted no evidence indicating that this decrease was caused by Marathon's fraudulent inducement. Accordingly, as to this kind of damages as well, American Pride has failed to submit sufficient evidence to survive summary judgment.

## Conclusion

Marathon has demonstrated that there is no genuine issue of material fact on the sixth element of fraud under Kentucky law—i.e., injury—because there is no evidence in the record that American Pride has suffered any damages. American Pride could have rebutted Marathon's arguments by producing affirmative admissible evidence of damages, *see Mitchell*, 964 F.2d at 582, but it has failed to do so. It is not enough for American Pride to produce a mere scintilla of evidence in support its position, *see Anderson*, 477 U.S. at 252, nor is it enough for American Pride to produce conclusory allegations, *see Hinson*, 2000 WL 1597947, at *2. Instead, American Pride must submit enough evidence that the jury could reasonably find for it at trial. *See Anderson*, 477 U.S. at 252. Additionally, since the allegation at issue here is fraud, the evidence must be such that, if believed, it would clearly and convincingly establish fraud. *See Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

---

[1] The profits per gallon actually decreased, but less than in previous years. *See* R. 82, Exh. 7 (indicating that the profits per gallon had been decreasing since 2004 and the rate of decrease from 2006 to 2007 was less than the rate of previous years).

The only admissible evidence that the plaintiff has presented in response to the defendant's arguments is a single interrogatory response that merely lists categories of damages and amounts. As no other evidence supports those assertions, the plaintiff's arguments are supported by nothing more than a mere scintilla of evidence, which is certainly not enough for any reasonable jury to find for American Pride by clear and convincing evidence.

Accordingly, it is **ORDERED** as follows:

1) Defendants' Motion for Summary Judgment, R. 46, is **GRANTED** in favor of the Defendants on American Pride's claim of fraudulent inducement in the Branded Product Supply Agreement.

2) A telephonic status conference among counsel and the undersigned is scheduled for **Monday, May 4, 2009**, at the hour of **1:30 p.m.**

3) The undersigned's chambers shall initiate the conference call, and lead counsel for each party shall be prepared to discuss any remaining issues in this case.

4) A court reporter is needed to transcribe the proceedings and shall be provided by the Court.

This the 29th day of April 2009.



Signed By:
*Amul R. Thapar*  AT
United States District Judge

9